1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7    MICHAEL TUTTLE,

8                        Plaintiff,            NO: 12-CV-3035-TOR

9          v.                                  ORDER GRANTING PLAINTIFF'S
                                               MOTION FOR SUMMARY
10   CAROLYN W. COLVIN, Acting                 JUDGMENT
     Commissioner of Social Security
11   Administration[1],

12                        Defendant.

13

14        BEFORE THE COURT are the parties' cross motions for summary

15   judgment (ECF Nos. 15 and 19).  Plaintiff is represented by D. James Tree.

16   _____

     [1]  Carolyn W. Colvin became the Acting Commissioner of Social Security on

17   February 14, 2013.  Under Rule 25(d) of the Federal Rules of Civil Procedure,

18   Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

19   No further action need be taken to continue this suit by reason of the last sentence

20   of 42 U.S.C. § 405(g).


ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

Defendant is represented by Carol A. Hoch.  The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. There being no reason to delay a decision, the hearing set for March 24, 2014, is vacated and this matter is submitted without oral argument.  For the reasons discussed below, the Court will grant Plaintiff's motion, deny Defendant's motion, and remand the case to the Commissioner for an award of benefits.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether this

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 2

1   standard has been satisfied, a reviewing court must consider the entire record as a

2   whole rather than searching for supporting evidence in isolation.  *Id.*

3        In reviewing a denial of benefits, a district court may not substitute its

4   judgment for that of the Commissioner.  If the evidence in the record "is

5   susceptible to more than one rational interpretation, [the court] must uphold the

6   ALJ's findings if they are supported by inferences reasonably drawn from the

7   record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

8   court "may not reverse an ALJ's decision on account of an error that is harmless."

9   *Id.* at 1111.  An error is harmless "where it is inconsequential to the [ALJ's]

10  ultimate nondisability determination."  *Id.* at 1115 (quotation and citation omitted).

11  The party appealing the ALJ's decision generally bears the burden of establishing

12  that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

13              FIVE-STEP SEQUENTIAL EVALUATION PROCESS

14       A claimant must satisfy two conditions to be considered "disabled" within

15  the meaning of the Social Security Act.  First, the claimant must be "unable to

16  engage in any substantial gainful activity by reason of any medically determinable

17  physical or mental impairment which can be expected to result in death or which

18  has lasted or can be expected to last for a continuous period of not less than twelve

19  months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

20  "of such severity that he is not only unable to do his previous work[,] but cannot,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 3

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to

preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 5

20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination,

the Commissioner must also consider vocational factors such as the claimant's age,

education and work experience.  *Id.*  If the claimant is capable of adjusting to other

work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, the analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above.

*Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  If

the analysis proceeds to step five, the burden shifts to the Commissioner to

establish that (1) the claimant is capable of performing other work; and (2) such

work "exists in significant numbers in the national economy."  20 C.F.R. §§

404.1560(c); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff filed concurrent applications for child disability insurance benefits

and supplemental security income on August 14, 2007, alleging a disability onset

date of December 1, 2005.  Tr. 15.  The applications were denied initially and upon

reconsideration.  Tr. 15.  A hearing was held at Plaintiff's request on April 15,

2010, before Administrative Law Judge Riley Atkins.  The ALJ rendered a

decision denying Plaintiff benefits on April 27, 2010.  Tr. 15-25.  The ALJ

concluded at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  Tr. 17.  At step two, the ALJ found that Plaintiff had severe impairments consisting of borderline intellectual functioning, dysthymic disorder, and substance abuse in remission.  Tr. 17.  At step three, the ALJ found that Plaintiff's severe impairments did not meet or medically equal any of the listings found in 20 C.F.R. Pt. 404, Subpt. P, App'x 1.  Tr. 18.  At step four, the ALJ found that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, with the caveats that he perform routine, repetitive, unskilled work, that he have no contact with the public and only minimal contact with co-workers, and that he be assigned to work alone rather than part of a team.  Tr. 20.  At step five, the ALJ concluded that there were a significant number of jobs existing in the national economy which Plaintiff could perform in view of his residual functional capacity and denied his claims on that basis.  Tr. 24-25.  The Appeals Council subsequently denied Plaintiff's request for review on January 20, 2012, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  Tr. 5-7; 20 C.F.R. §§ 404.981, 416.1484, and 422.210.

## ISSUES

Plaintiff raises four issues for review:

1. Whether the ALJ erred in finding that Plaintiff's severe impairments did not meet or medically equal Listing 12.05C (mental retardation);

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 7

2.  Whether the ALJ erred in failing to include certain cognitive and social

functioning impairments identified by Dr. Lyon in the hypothetical posed to

the vocational expert;

3.  Whether the ALJ erred in discrediting Plaintiff's testimony; and

4.  Whether the ALJ erred in discrediting Plaintiff's mother's lay testimony.

DISCUSSION

**A. Listing 12.05C – Mental Retardation**

To satisfy the criteria for mental retardation under Listing 12.05C, a plaintiff must demonstrate (1) deficits in adaptive functioning which manifested prior to age twenty-two; (2) a valid verbal, performance, or full scale IQ score between 60 and 70; and (3) a separate physical or mental impairment that imposes an additional and significant work-related limitation of function.  20 C.F.R. Pt. 404, Subpt. P, App. 1, 1205.  The ALJ found that Plaintiff was not disabled under this Listing because (1) Plaintiff's two IQ scores within the applicable range were "invalid," and (2) Plaintiff did not have a separate impairment that imposed an additional and significant work-related limitation of function.  Tr. 19-20.  Defendant concedes that the latter finding was erroneous.  ECF No. 20 at 7.  Accordingly, the only remaining issue is whether the ALJ erred in disregarding Plaintiff's IQ scores.

Having thoroughly reviewed the record, the Court finds that the ALJ erred declaring Plaintiff's IQ test scores "invalid."  Contrary to the ALJ's findings, the

psychologist who administered the testing, Dr. Lawrence Lyon, did not "question

the validity" of the test results.  Rather, Dr. Lyon simply noted the possibility that

the results may have slightly under-represented Plaintiff's true level of intellectual

functioning and rendered a diagnosis accordingly:

> Mr. Tuttle was alert and oriented to person, place, time
> and situation. He was generally cooperative with the
> evaluation and made fair eye contact with the examiner.
> He put forth fair effort toward the tasks expected of him.
> At times he did not appear to persist on tasks. As can be
> seen from the testing results, Michael's Verbal Scale IQ
> score [of 72] falls in the Borderline range, while his
> Performance Scale and Full Scale IQ scores [of 67] fall at
> the upper end of the Mildly Retarded range. Based on the
> above observations regarding his slightly poor task
> persistence, it is estimated that he currently functions in
> the Borderline range of intellectual functioning. Good
> consistency was shown among his subtest scores, lending
> credence to the current assessment.

Tr. 184.  Given that Plaintiff was "generally cooperative" and "put forth fair effort"

during the testing, the fact that he exhibited "slightly poor task persistence" was

not a valid basis for categorically rejecting his IQ scores.

Moreover, the ALJ's finding that Plaintiff "was observed to be 'nonchalant

and lackadaisical' upon testing" is not supported by substantial evidence.  Tr. 20.

The portions of Dr. Lyon's evaluation upon which the ALJ apparently relied in

reaching this finding read as follows:

> [Mr. Tuttle] arrived on time for his appointment. . . . He
> was dressed in casual clothing appropriate for the
> weather including a T-shirt and corduroy pants. His

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 9

hygiene and grooming were fair. He had a couple days' growth of beard. . . . He **presented in a somewhat lackadaisical manner**, and showed little in the way of social graces [by] sniffing, clearing his throat, yawning and stretching. His movements were lethargic and he appeared somewhat tired and dragged out.

\* \* \*

Mr. Tuttle demonstrated a range of affect; his affect was generally appropriate to the topic at hand, though he tended to smirk at times suggesting some attitude issues. **For the most part, his affect was nonchalant and lackadaisical.** He said his mood is not too good, and that he is stressed out about whether he will get help with his rent and tooth problems. . . . He said he has felt at times that life was not worth living but has never tried to end his life.

Tr. 184 (emphasis added).  These comments do not support the ALJ's conclusion that Plaintiff was "nonchalant and lackadaisical" *about the IQ testing*.  At best, these comments indicate that Plaintiff acted somewhat casually throughout the interview.  As noted above, however, Dr. Lyon specifically found that Plaintiff was "generally cooperative" and "put forth fair effort" on the IQ test.  Tr. 184.  The ALJ's finding to the contrary was clearly erroneous.

Finally, the ALJ's rejection of Plaintiff's IQ scores is not supported by other evidence in the record.  To the contrary, the record reflects—and the ALJ acknowledged—that Plaintiff "was previously determined to meet eligibility requirements for mental retardation (as defined by Washington State) through school testing in 1997 and 2001."  Tr. 21.  Accordingly, this is not a case in which

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 10

the ALJ was permitted to "discredit [Plaintiff's] IQ scores based on other evidence contradicting them." *Hancock v. Astrue*, 667 F.3d 470, 475 (4th Cir. 2012). Had the ALJ not improperly rejected Plaintiff's IQ scores, Plaintiff would have satisfied Listing 12.05C. Thus, the case will be remanded for an award of benefits.

**B. Step Five Challenge**

The Court's ruling above renders Plaintiff's remaining challenges moot. Nevertheless, the Court deems it appropriate to address Plaintiff's argument that the ALJ failed to satisfy his burden at step five. Plaintiff is correct; the ALJ erred in failing to include certain cognitive and social functioning impairments identified by Dr. Lyon in the hypothetical posed to the vocational expert. On a form attached to his narrative report, Dr. Lyon found that Plaintiff suffered from (1) moderate limitations in his ability to learn new tasks; (2) moderate limitations in his ability to respond appropriately to and tolerate the pressure and expectations of a normal work setting; (3) marked limitations in his ability to understand, remember and follow complex instructions; and (4) marked limitations in his ability to exercise judgment and make decisions. Tr. 189.

Curiously, despite affording "significant weight" to Dr. Lyon's opinions, *see* Tr. 23, the ALJ failed to include these limitations in the hypothetical posed to the vocational expert at step five. Defendant suggests that the ALJ implicitly rejected these limitations based upon Dr. Lyon's observation that "appropriate training

[and]/or education would likely result in improved job skills." Tr. 190.  The

problem, of course, is that an implicit rejection of such findings is plainly

insufficient. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) ("[T]he

Commissioner must provide 'clear and convincing' reasons for rejecting the

uncontradicted opinion of an examining physician.").

      When Plaintiff's counsel supplemented the hypothetical with the restrictions

identified by Dr. Lyon above, the vocational expert opined that Plaintiff would be

precluded from finding other work existing in significant numbers in the national

economy.  Tr. 329-31.  Accordingly, Plaintiff is entitled to a remand for an award

of benefits on this alternative ground as well.

//

//

//

//

//

//

//

//

//

//

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 12

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 15) is **GRANTED**.

2. Defendant's Motion for Summary Judgment (ECF No. 19) is **DENIED**.

3. This case is **REVERSED** and **REMANDED** to the Commissioner for calculation of benefits consistent with this Order pursuant to the fourth sentence of 42 U.S.C. § 405(g).

4. The hearing set for March 24, 2014, is **VACATED.**

5. Plaintiff may file an application for attorney's fees and costs by separate motion.

The District Court Executive is hereby directed to file this Order, enter Judgment for Plaintiff, provide copies to counsel, and **CLOSE** the file.

**DATED** May 20, 2013.



THOMAS O. RICE
United States District Judge